The next case is Avianca Holdings v. Burnham Sterling & Company. Good morning. Good morning. May it please the Court. I'm Michael Holbein. I'm a lawyer with the law firm of Smith, Gambrell & Russell in Atlanta, Georgia, and I represent the reorganized debtors' appellants in this bankruptcy case, appellants from a decision of the bankruptcy court. This case concerns Section 365 D.5 of the Bankruptcy Code, which deals with the debtors' post-petition, pre-rejection obligations under a personal property lease. But it's worthy of consideration to note that whatever this Court decides regarding the application of D.5 will inevitably be applied to the application of subsection D.3, which deals with non-residential real property leases. The statutes are companion statutes with very similar language. D.3 and D.5 direct a debtor to perform all obligations arising under a lease during what I'll call a protected period. For personal property leases under D.5, this period begins to run 60 days after the case is filed and concludes when the lease is assumed or rejected. For non-residential real property leases, it begins to run immediately after the case is filed and, again, concludes upon assumption or rejection of the lease. And one of your arguments is that this would not be a secured debt because the debt was preexisting prior to filing. Sure. So it doesn't fall within that window of where your client has to elect whether to honor the debt or not, correct? Somewhat, if I could. Our client doesn't get to elect to honor these debts. The code is pretty specific. It compels compliance. And the issue is whether it arises under the lease such that it gets this special treatment. Well, there's a difference in D.5. The obligation has to first arise within the 60-day period, right? That is right. Although I think that the cases that look at this focus more on, well, two things. One, what an obligation is, although there's no contest that this is an obligation on the lease. But more specifically, when it arises, whether it's first arising during the lease. Well, I understand. That wasn't a hostile question. I take it your position is that the initiator fees didn't first arise after the petition. They first arose at the time of the signing of the lease since there was a provision within the leases as to the payment of the initiator fees periodically throughout the period of the lease, correct? That's correct. And it's also our position. These are payment due dates, not the dates that the actual obligation, that the initiator fees were earned. That's correct. And notwithstanding the lip service given to plain meaning and the statutes that adopt what's called the billing date approach. Judge Phelan never mentioned the word first arises in her opinion. Well, the other cases that adopt a billing date approach. Oh, that's correct. There is not a discussion of first arising. Have you raised the issue of first arises as distinguished? I thought you started your argument by saying this provision is just like the real property provision. No, we have not raised the issue of first arises in our argument. Candidly, this case has been viewed primarily as is this an accrual date versus a billing date approach. Right. You're saying you're putting your weight on arose, not when first arose as opposed to some other meaning of arose. That's correct. But we have to decide what the statute means, don't we? Yes, you do. And you can begin, as you should in any question of statutory interpretation, you begin with the text of the statute. But you're not limited to the text of the statute. And so these cases that go, that claim this mantle of plain meaning say that arise clearly means do, notwithstanding the fact that arise and do are different words. It seems to me arise is totally ambiguous on the face of it. One may have to look elsewhere to find what it means because it could easily mean either, couldn't it? Sounds like you're reading my brief. I agree entirely. Well, I did read your brief. I agree entirely. Are you surprised that Judge? No, it is the sensible interpretation of the statute, that this ambiguity leads to a consideration of what this statute means in the context of the greater bankruptcy case. Right, and the question I was going to ask is, doesn't your argument sort of collapse this provision back into, what is it, 503B1? And the law as it stood before. Because you are requiring the, your adversaries to establish that the, they performed services after the effective date of the bankruptcy, which would have been the rule independently of 365D. Right, because that's really what you're saying. No, it isn't. It's going to take me a minute to answer this, so I ask that you indulge me. But it doesn't. You're correct that prior to the enactment of 365D3 in 84, the process was that if a landlord wanted to be paid for rent after the debtor filed for bankruptcy, the landlord had to make an application to the court requesting an administrative expense. And that application was determined based on whether or not the landlord had provided a benefit to the estate. When 365D was enacted as part of the shopping center amendments, the whole purpose was that this landlord would no longer be required to make a shilling of benefit. And because administrative expenses aren't necessarily paid when the court issues the order allowing them, the debtor was compelled to timely perform those obligations. Now, the practice before 365, and I'm not talking about the administrative expense practice, was that those claims were still prorated. And the cases that examine this say there's no, there's nothing to indicate that there was an intent to examine the proration process. Nothing that we are saying requires that the appellees show that there was a benefit to the debtor. What we're saying is that the appellees were not performing any service. 365. No, because what you're saying is the reason we should relate this back, in effect, and say it arose when they performed the services, and that there's no real reason in policy why the brokers here, as opposed to, for example, the lessors of the plane, are doing anything for the estate anymore. Isn't that the policy reason why you think this would be a good idea? That is part of the policy reason. If I could, I'm going to provide the court with one example that would show that the current reading, the billing date approach actually does, it goes against this idea of keeping landlords from having to file a 503B claim, file a request for administrative expense. And I'm going to give you an example of a debtor who's in a jurisdiction that follows the billing date approach. So on the first day of the month, that debtor's rent comes due. On the second day of the month, that debtor files for bankruptcy. That debtor doesn't owe rent in this billing date jurisdiction until the next month. If that landlord wants to get paid for that intervening month, that landlord has to file an application and show a benefit of the estate. This is the exact regime that Congress was attempting to undo, the 365D3. I'm trying to square your argument with a question I have for you. Sure. Which is, prior to filing the petition for bankruptcy, could your client have gone to Byrne and Sterling and said, pay us those fees under the lease agreement that per the terms of the lease agreement, those brokerage fees were not to be paid later? Could you? Would they have an obligation to pay? Our client had the obligation to pay the debt.  Right. Could they have come to you and said. Made demand. Made demand. What would the response have been? It wasn't. I'm assuming, no, that would be a breach of a contract. You're not owed a penny until the due date. Sure. That's not particularly unique with debt, though. There's all kind of debt that isn't due until the due date that's treated as pre-petition debt based on the fact that there's no debt. But you're asking this court to ignore a contract that clearly requires payment due during that window of when you post filing petition. And that's, I guess, what I'm struggling with. They are saying, well, these fees were pre-existing. They were owed by us. But yet, if they had come to you to get payment, you would have said no. I'm not asking the court to ignore that contract. I'm asking the court to find that 365D5 doesn't apply to it. And I think that it's clearly important in a case like this where you're going to have. But doesn't apply to it because the terms, the contract itself, under the contract, those fees were already owed. No, it doesn't apply to it because that obligation didn't arise during the protected period. This is a. Because it didn't arise during the protected period because it was already owed. Or am I missing something? Because it was already earned and owed. Earned and owed. You're making a distinction between the debt and performance under the debt. The debt exists. Your view is the debt exists pre-petition. It's like signing an installment note. Yeah. And the debt exists. It exists within the note. The fact that there might be installment payments on the note, due dates, performance dates, doesn't mean that there isn't a debt that exists, an underlying debt that would be due the estate, correct? That is correct. I would go. But what is the obligation of the debtor? There's no obligation on the debtor to pay a penny until the due date for the payment, right? I mean, there is a debt owed, but there's no obligation to pay it. The obligation to pay doesn't arise until afterwards. That's an interpretation. Again, I would say. Isn't that a fact? I mean, isn't that what the contract says? You don't have to pay anything. You couldn't. They couldn't sue you and say, before the payment becomes due, and say, you are obligated to pay us this money. Because then you were obligated to pay that money. Based on the plain meaning of the word obligation, you clearly had an obligation. I'll give you an example. The appellant's obligation to file a brief did not arise on the due date of the brief. It arose when the appellant filed the appeal. The brief came due on the due date. So there was an existing obligation to correlate or to merge obligation and performance, like the billing date courts do, is a simple approach, but it doesn't. I mean, when you think about residential or business real estate, I've seen many leases that are in the form that says you owe this much rent for the year. And, indeed, you are obligated to pay that much rent for the whole year, right? If you move out or, you know, abandon the property or renounce the lease, you still have an obligation to pay. So what you're saying is that as to subsection D as well as subsection 5, there would be the landlord is not entitled to be paid because the obligation under the lease arose at the time the lease was signed that obligated the lessee to pay monthly installments on an annual amount that was owed for a one-year lease of the property. Outside of bankruptcy or inside of bankruptcy? Inside of bankruptcy, under these circumstances. That's why you say it has to be done, right? No, under these circumstances, first the obligation arises in correlation with the opportunity to enjoy the property. Unlike the situation here where everything was done pre-petition and all the brokers had to do was sit back and collect payments, a landlord, and this is the whole purpose behind 360. I mean, seriously, I'm having – let's take the installment loan. The obligation to pay under the installment loan is periodic, but if the payee filed for bankruptcy, the creditor would file a claim for the entire amount due, not – wouldn't say – it's not 12 obligations to pay once a month on the 15th of the month. It's the whole amount. That's correct. I mean, so the fact that – I mean, the fact that the initiators earned their – the note clearly says that the initiators earned their fee at the time of the signing of the lease and then made a provision with regard to how they'd be paid. Now, so they couldn't – and was there a provision with regard to the acceleration of their payments with regard to default? I don't believe so. My understanding of the way the provision worked is it was an unconditional debt regardless of what happened with respect to the lease itself. It's an agreement between the initiator and the – Are these all the same – is the other side not here? They're here. They're just not sitting here. Oh, okay. I didn't see them sitting at the table, so I couldn't understand whether you had your phone on or not. I saw a name. But the – and they filed individual – what did they do, file monthly claims during the period? No. They filed one claim? They waited until the end of the case and they filed a handful of claims. There were 20 leases. There were three debtors. So they filed a handful of claims at the end of the case, and then they filed a motion to compel those claims, compel payment of those. Did the banker project the leases at any point? Yes, all these leases. Eventually. Yes. But there's still an amount due for the period before they did. That's right. Had they rejected the leases initially, would the initiator's fees all have been due and payable at that time? No. They would have been pre-petition rejection damages. So they would have – 365G, the bankruptcy – Exactly. I mean, these broker's fees were perhaps askewtly by the brokers, seeing that your client may have been in financial trouble. I mean, having trouble understanding why a broker would not want to be paid immediately. And the obvious answer is because maybe that would tip them over into bankruptcy, and we're waiting to see what's going to happen. I think you'll find that this was a COVID-related bankruptcy. These leases were entered into over a six-year period that preceded that. I doubt that that was – No, because whatever the reason, though, the point – there's two questions I have. One with respect to the installment loan hypothetical. There's no provision equivalent to Section 365 for installment loans, right? No. So this is an exception. This is something that is being treated differently than the average installment loan, right? Sure. Okay. And the other question is, you're, I think, suggesting – and I understand the equitable appeal of this – that the brokers did all their work at the beginning, and now they've arranged to be paid by these installments. But the installments for the broker are baked into the lease, right? They are. The only way you get out from under that lease obligation, including the installments payments to the brokers, is by rejecting the airplane lease, right? That's correct. Because you cannot pick and choose and say, we'll keep the lease of the planes and keep paying the amount of money that goes to the financial company that owns the plane, but we won't pay the APRs, the additional rent payments, ARPs, the additional rent payments that are really the installments on the broker's fee. That's all baked into the lease. It is. Right. So would you have a different reaction to – I mean, what is the story with respect to the lessors of the airplanes? They were paid through the point of rejection, and then they got unsecured claims for previous. So they were paid for the very months that the brokers did not get the ARPs.  How does that happen? Wouldn't they have been – wouldn't your client have been entitled to make the same argument that you are making here with respect to the brokers about the airplanes? No, they wouldn't have, because our argument was underpinned by this – by following what has been called the accrual approach to these sorts of leases, and that's that the expenses that are paid are those that are accrued during this protected period. So why is that – why is half of the contract, the lease contract, governed by the accrual obligation and the other half by the – I have trouble understanding the terminology. Because none of the broker's fees accrued during the pre-petition – during the post-petition period. None of them accrued. They accrued when the work was performed pre-petition, sometimes years pre-petition. But why isn't the same thing true of the airplane leases? Because the thing that accrues is the opportunity to use the plane. It's the fact that 365 D3 and D5 were meant to protect landlords who were estranged from their property, prohibited from exercising their remedies, so we're going to provide them their contract rate for that period until it's assumed to be rejected, because that's the thing being used. There's nothing being used here. My time has long since expired, and I do hope I have a rebuttal, but if I could say one thing before I sit down. If there is one piece of what I think is just sort of mandatory reading on this, and it's a case that shows up in the district court opinion, and that's Judge Gerber's decision in the bankruptcy court in Ames, which was in Ames Department of Historic Cases. That case contains the most thorough, sifting, and compelling analysis of why what a billing date approach is, why it's a bad idea, why it might make sense to the limited facts of a broker fee where it was baked into the lease, but why adopting that approach, which is what this would be interpreted as doing, would wreck the system of fairness that 365 was meant to address. That's the whole fact that a landlord in a billing date jurisdiction has to do the very thing, which is seek an administrative expense claim for the first month's rent. I'm sorry, I didn't hear you. What was the name of the case again? It's called N. Ray Ames Department Stores, and I can provide you with the cite. It's 306BR43. It's Southern District of New York Bankruptcy Court, 2004. It's Judge Gerber. It is cited in the district court opinion. We cite a case called Stone Barn, which effectively incorporates much of the argument. Thank you, counsel. You have reserved your full one minute for rebuttal. Thank you. Thank you. Attorney Friedman, did I pronounce that correctly? Yes. We thought you had forfeited your argument when we saw the empty seats, and I didn't realize at the outset. But to those who still have their cases to argue, when we call your case up, both sides arguing the case should come up and be seated at counsel's table. But you may proceed. Thank you. Thank you, Your Honor. I apologize. I was sitting in the second seat, not the first seat. I want to answer your question directly, Your Honor, about installment contracts, because there's a Ninth Circuit case. Were you vacillating between directly and indirectly? No, go ahead. It's a Ninth Circuit case called Cooperman, and the site is 265 F. 3rd, 846. I had a feeling you might ask about something like an installment contract, and that expressly takes the view that it does not matter about an installment contract. That was a promissory note that was entered into well pre-petition, and the court looked at this in connection with a lease obligation. And, again, I think, as Judge Lynch pointed out, obligations incurred in connection with lease obligations are different than other installment contracts. If there had been a breach of the lease before the bankruptcy petition, would your client have been in a position to sue for the entire sum of the initiator's fees? I believe they would have been able to. The obligation of the initiator's fees arises out of the lease. Absolutely. It arises out of the lease. And so there had been payments on the lease prior to the petition? Many. So there had been many initiator fees paid prior to the petition? Under the lease agreement, there was additional rent payments made on a monthly basis under all of the different leases. Then the petition is filed, 60 days goes by in which there are no payments made, and then, and I think this is the key aspect of Section 365, the debtor is supposed to go back to performing its obligations under the lease that start arising post 60 days. And your Honor focused on the word first. Well, but the thing, I guess the thing that troubles me, and you heard me ask your opponent this, it says 365 relates to the trustee shall timely perform all the obligations of the debtor except those under 365b2, that's real estate. First arising from or after 60 days of the order, first arising. But you just told me that the obligation of paid initiator fees first arose at the time of the signing of the lease, and that there were a series of these. Weren't they all the same? Yes, but each month's obligation didn't arise until the due date. Is it an independent obligation? I think it is. It comes due each month. And, in fact, in Montgomery Ward, the Third Circuit case, the Third Circuit expressly actually looked at the word, used the word first. I mean, this is about the rental of personal property. Montgomery Ward? 365. 365 is about a personal property lease. Correct. And uses the word all obligations. So you can't pick and choose between whether a property is being used in a specific way or not. It says all lease obligations have to be performed. That first arise. Yes. So, I mean, that seems to me like it's the first time, not the 33rd time. Well, I think the 33rd time, the obligation of the 33rd time arose, and the debtor had to make a payment. Which is after the petition is filed is the first time. Is the first time the obligation to make that rental payment. Is it number 34? Yes. That's why the debtor doesn't have to pay 32 and 33. But they all have the same. But the nature of the obligation, the nature of the obligation all stems from one document, correct? Sure. The Third Circuit addressed this in Montgomery Ward. Is there a difference between performance and duty? I think there is a difference between performance. I have a lease for a year, and I'm supposed to make periodic payments under it. Yes. The lease defines my obligations to the landlord, does it not? The lease defines your obligations. When you have to perform the obligations is, I think, highly dependent on the schedule set forth in the contract. I think, with respect, the court is, by looking at the first date, the court is doing what the court did in child world, which Judge Sotomayor criticized, which is conflating claim, which is when a claim arises, with performance of an obligation. And again, the Third Circuit directly looked at this in Montgomery Ward. And it said, the question before it there was, does 365 require a payment by the trustee of all amounts that first become due and enforceable after the bankruptcy petition under the terms of the lease? And what it said, an approach which calls for the trustee to perform obligations as they become due under the terms of the lease fits comfortably within the plain statutory text. Because what 365 is so focused on is giving the debtors a 60-day grace period and then performing the contract as written. And again, I think- So your view is then, is that the fact that there's a lease of personal property that precedes the petition that has periodic payments within it, 365 says, well, if a payment, if a periodic payment comes due after the petition, that's the first obligation that's covered by 365-5? After the 60-day period. Yeah. So they get a 60-day grace period. So as opposed to those that preceded, some of which may not have been paid, they don't get the coverage of 365-5? That is exactly what the code is intended to do. Okay. You have an unsecured claim. I think I understand. If we had, if there were unpaid amounts pre-petition, we would have an unsecured claim for those. What the code says is until assumption or rejection. Right? If upon the assumption, unsecured, any unpaid pre-petition amounts, they'd have to cure. Upon rejection, we would have gotten a, the claim we did, Judge Jones and Judge Vela held we were entitled to, but a rejection damages claim for any pre-petition amounts owed. That's the bright line 365-D-5 sets up. How do you respond to Avianca's contention that your reading of 365-D-5 cannot be squared with the statute's role in the greater bankruptcy scheme? And specifically, I think your opponent said when it comes to the rental, the fee for the rental of the plane itself, that's the personal property. That's what the bankruptcy scheme, you know, the new statute was designed to protect a landlord or someone who owns that property to not be deprived of it without some sort of secured payment. Whereas your client's brokerage fees are not personal property. I think he was trying to make that distinction and then saying that your reading of it is not consistent with the overall role of the statute in the bankruptcy scheme. What's your response to that? So I guess I have three responses. The first is there's a built-in safety valve to address an issue like that in the statute. If the debtor thought that there was some unfairness to paying our clients, they could have invoked the equities of the case provision. This is the clause that says unless the court, after notice and hearing and based on the equities of the case, orders otherwise. Absolutely. So the bankruptcy court could vary the rule that you are arguing for. Of course, you would have, if they had made that application, you would have opposed it. But the bankruptcy court would then be in a position to make a decision based on the equities of the case, and they did not take advantage of that. Absolutely. So that's the first point. The second point is, as I mentioned earlier, all means all. Congress could have picked and chose between provisions in a lease. It could have said you don't have to pay attorney's fees. It could have said you don't have to pay certain kinds of costs that aren't directly related to usage. It didn't. All means all. And the third issue is the waiver. So this, your brokerage fees were cleverly constructed to become part of the obligation of the lease, and therefore the trustee shall timely perform all of the obligations of the debtor under an unexpired lease is not limited to that amount of the money in the lease that actually goes to the lessor. That's right. And, again, in Montgomery Ward, the Third Circuit did say that, you know, Sen. Hatch's statements are actually not at all clear as to who was intended to be covered and what was to be covered and cautioned against mincing too finely. And the third point I would make, Judge Cahn, in response to your question, is that I think that approach runs contrary to 503B1. 503B1 does not apply to 365D5. That's the provision that says you have to give value in order to get cover, to have the debtor perform in full your obligation. And Congress intentionally chose to waive that provision, not waive that provision, but remove that provision from the ambit of personal property leases post 60 days if they aren't assumed. I guess, and perhaps an analogous, because a lot of the cases deal with issues, there are some cases that go against your position, but they deal with tax liens or taxes due on property that's, you know, or other types of fees. But I suppose you could have a lease agreement for a piece of property, a building, business, whatever it is, and included in that lease could be a brokerage fee for the real estate agent that helped secure that property, prorated, I suppose, over time. Would that analogy still apply? Would that be similar to what we have here? It would. I think that would be covered by all obligations. And they can't, when it comes time to assume or reject the obligations, they can't pick and choose among the obligations under a particular lease contract, right? This Court is referring to the come-on-array doctrine. Right. You assume or reject in full. Right. You can't parse. Right. So they have to make a decision either we're rejecting these leases or we're accepting them, assuming them. Yes, but you know what else they could have done? If Avianca was really so troubled by these fees, it could have rejected the leases in the first 60 days and just agreed to new obligations with its aircraft lessors and squeezed us out, right? That's another possible avenue. Avianca waited 19 months to start rejecting, and in some it waited long after that while it knew, I think, that our clients believed that they were entitled to pay. And I take it that, I mean, they weren't going to reject the leases and didn't for quite some period of time because they needed the airplanes. And then later, I guess they found other lessors so they could refinance the planes a different way and rejected the preexisting leases and got new leases. But it took them 19 months to do that. That's right. I mean, you know, just to make a point in response to one of your questions, that counsel, I think Forrest, rightly acknowledged these fees are not de minimis, but in the nature of Avianca's overall bankruptcy are quite small. And this was not designed as a bankruptcy evasion tool. Obviously, our clients much rather would have been paid up front if they know that there's a risk of having contracts rejected and these not treated as part of lease obligations. Is this a common provision? I mean, this is outside the record, but I'm just wondering. It strikes me as odd. I would think that generally a broker would want to be paid up front rather than deferring the income over a very lengthy period of the lease. I think aircraft – so I'm also not a subject matter expertise in this, but my understanding is that people like my clients do it as an accommodation to get business. It's a competitive business advantage to be willing to arrange financing instead of have some to take it over time. Okay. Again, to be forthright, we did not cite Kuykerman because I didn't think installment contracts was directly on point. I do think it's worth reading because I think it provides useful context to the question of when an obligation first arises when viewed in the context of a promissory note, payment schemes going out into the future. Does the Court have any additional questions? Seeing none, no. I ask that you affirm Judge Jones and Judge Favre's opinion. Thank you. Thank you so much, Your Honors. Thank you, Counsel. You have Attorney Holbein? Yes, ma'am. One minute for rebuttal. Thank you. Aviaca didn't need to take advantage of the safeguards in 365d3 because they never asked for the money. It was never an issue. We were in an accrual jurisdiction. Southern District of New York Bankruptcy Court has followed the accrual approach. It was understood that these obligations accrued prior to the petition date, so there was not a concern in that regard. With respect to cleverly constructing the contract, there are all sorts of obligations in a lease that originate outside of the bankruptcy period that are part of the lease. There are obligations to the lease. The courts that deal with billing date versus accrual address them. Taxes is probably the best one, and those courts that accrue say we're only going to use the taxes that accrued during the period. But most of the courts go one way or the other, don't they? Most of the courts are accrual approach. Well, I mean, the only appellate court, it seems to me that this often happens in bankruptcy. The further away you get from the bankruptcy court, the more you run into generalist judges who may be less sensitive to the particular needs of bankruptcy courts and more inclined to interpret statutes the way they interpret other statutes. But it is a fact, is it not, that other than Judge Posner's Seventh Circuit opinion in a tax context, where the Seventh Circuit also goes the other way for some reason, something else, that's the only circuit court. There are two circuits that go against you, I think, right? The circuits that go against us are the Tenth Circuit in Koenig, which is a weird case, and Montgomery Ward, which is the leading case. That's the Third Circuit. I think you'll find the thorough analysis of that distinction in the Ames case. If I conclude with one of the... But is there any court of appeals that has gone your way? The Seventh Circuit in Posner. Judge Posner. Yes. But that is, again, they're on both sides of this, I take it, sort of. To the extent that you can read. HALO tries to distinguish the facts. Yeah. Rather than articulating a principle of such a logical breadth that the court needs to apologize for in advance, and I think that's what you'll find in the billing date approach cases, is they all contain an apology that, yeah, we know this is wacky. So rather than articulating a principle of such illogical breadth that courts need to apologize for in advance or need to immediately limit their holdings to the particular facts, it's more appropriate to consider whether such illogical and unjust rule is really what Congress intended. That's from Ames. That's at page 73 in Ames. These brokers were not beholden to this case. They were not waiting estranged from their property. They're not the parties that 365 D.3 or D.5 was intended to protect. But this Court's decision on that will have broad implications with respect to the application of that in cases every day in the circuit. Thank you. Thank you, counsel. Thank you to both sides. Thank you very much, gentlemen. Thank you both. Very well argued by both sides. We'll reserve decision.